## EXCLUSIVE LICENSE AGREEMENT

**This exclusive license agreement** ("Agreement") made as of this 9th day of March 2004 (the "Effective Date") between NDA Consulting Inc. (NDA), a Florida corporation and LifeLink Pharmaceuticals Inc. (LLP), an Ohio corporation.

## Recitals

**WHEREAS, LLP** possesses the Rights to technology, including the Patent Rights (as hereinafter defined); and

**WHEREAS, NDA** seeks an Exclusive License to market products under the Patent Rights in the Direct Sales channel of distribution in the Territory (as hereinafter defined) upon the terms and conditions hereinafter set forth;

**Now, Therefore,** in consideration of the premises and the mutual covenants contained herein, the parties hereby agree to as follows:

### SECTION 1-DEFINITIONS

1.1 FUTURE PRODUCTS. "Future Products" shall mean nutritional products of LLP which are covered by either the Patent Rights, other pending or issued patents, and/or are subject to trade secrets, an exclusive source of supply or other factors which make the products proprietary to LLP.

1.2 Issued Claim. "Issued Claim" shall mean any claim of any issued patent within the Patent Rights, whether such patent issues prior to or after the Effective Date. Issued Claim shall not include any patent claim which has been (i) disclaimed, (ii) dedicated to the public, or (iii) held invalid or unenforceable by a final decree of a court or government agency of competent jurisdiction from which no appeal is or can be taken. Issued Claim shall not include any claim of a patent which has expired or been canceled due to failure to pay maintenance or annuity fees.

1.3 Licensed Product. "Licensed Product" shall mean only LLP Products, which any Issued Claim or any Pending Claim reads on, provided that such claim has not been held invalid or unenforceable in an unappealed or unappealable decision of a court of competent jurisdiction.

1.4 NDA Affiliates An "NDA Affiliate(s)" shall mean any person or entity who (i) is directly or indirectly controlled by NDA, (ii) directly controls NDA, or (iii) is controlled by another person or entity who also directly or indirectly controls or is under the control of NDA.

1.5 Term "Term" shall mean a period of five (5) years from the Effective Date or the date when the last patent in such other country included in the Patent Rights expires, is declared invalid or unenforceable by an unappealed or unappealable order of a court of competent jurisdiction, or is canceled for failure to pay maintenance fees. At the end of the Term, NDA shall have the continuing option to renew this Agreement for additional five(5) year terms. The option to renew shall be affirmatively exercised by NDA by written notice within thirty(30) days prior to the expiration of the Term.

1.6 Product. "Product" shall specifically mean the patented product referred to as "DME-Sulfate" and any variations or derivatives of "DME-Sulfate", including "DME-Natural". LLP will provide an overview of the products in the form of a 'Product Data Sheet' as well as in-depth product information in the form of a 'Product White Paper' that will include all relevant reference material.

1.7 Direct Sales Market. "Direct Sales Market" shall mean direct sales activities of all kinds, including, without limitation, sales via network marketing, direct selling multi-level marketing and one-on-one sales activities of product to the ultimate consumer, and includes the right of the direct sellers to advertise the good on television, radio, and other media and includes direct sales through retail facilities.

1.8 Territory. "Territory" shall mean the following countries: Germany. In countries other than the Territory, NDA shall have a Right of First Refusal as set forth in section 2.2 below.



EXHIBIT
B

SECTION 2 - EXCLUSIVE LICENSE

2.1     Product In The Territory. LLP hereby grants to NDA an Exclusive License and/or Sublicense to sell LLP products in the Direct Sales Market in Germany for the Term of this Agreement. NDA shall be solely responsible, at NDA's expense, for procuring the finished products from the chosen Manufacturer(s).

2.2     Product In Countries Other Than the Territory. LLP hereby grants to NDA a Right of First Refusal to Exclusively sell or offer to sell LLP products in Countries Other Than Germany. Under such Right of First Refusal, NDA shall have a period of not more than sixty(60) days after receipt of any such bona fide written offer or written statement of terms presented by LLP to advise LLP of whether NDA will meet the terms of such offer.

2.3     Improved and Future Products; Disclosure and Right of First Refusal. Apart from the original products presented at the launch of business, from time to time, LLP may make improvements to their products or technology, or may otherwise develop Future Products. LLP shall disclose any such Improved Products and Future Products to NDA ("Product Disclosure"), and shall grant a Right of First Refusal in the Direct Sales channel of distribution in the Territory. NDA shall then have a reasonable time, and in any event, not more than thirty (30) days to evaluate the Improved Products and Future Products. Should NDA choose to reject the Improved Product or Future Product proposal idea and not offer terms to LLP, LLP may offer the same Improved Product or Future Product proposal to third parties. However, should NDA accept the Improved Product or Future Product proposal, LLP and NDA shall negotiate in good faith to reach an Agreement and LLP shall not negotiate with any third party on such Improved or Future Product.

2.4     Non-Exclusive Distribution In markets or channels of distribution that are not explicitly mentioned in the Agreement, NDA shall have the non-exclusive right to market, distribute and sell the Product.

SECTION 3 – LICENSING FEES

3.1     License Fee, During the Term, for all products ordered by NDA for distribution, NDA shall pay a license fee equal to $.75 per unit (equivalent of 0.5oz serving size of DME-Sulfate), payable within ten business days of the close of each quarter.

3.2     Minimum License Fees, During the Term, to maintain exclusivity, NDA shall pay a minimum license fee of $22,500US quarterly to LLP or its designees. This represents a minimum sale of 10,000 units (equivalent of 0.5oz serving size of DME-Sulfate) of the Product(s) on a monthly basis.

3.2.1   Acknowledgement of pre-payment, LLP acknowledges that they have already received $7500 earnest money in pre-payment of the first month's minimum Licensing fees.

3.3     Reports and Records. All Purchase Orders made to the Manufacturer(s) will be copied to LLP for their records. LLP shall have the right to audit sales of the Product at any time.

3.4     Payments Owed Only to LLP. In no event shall NDA be required to pay a Final Selling Price Fee for its Product or any other licensed Product to any party other than LLP, and LLP shall in all instances be responsible for payment of any Final Selling Price Fee or fees it may owe under the Patent Right to third parties. LLP shall indemnify and hold NDA harmless for LLP failure to make such payments to third parties.

SECTION 4 - ADDITIONAL OBLIGATIONS of LLP

4.1     Unique Products for NDA. In all instances, LLP shall propose only Unique Licensed Products to NDA, and shall not license to third parties in other channels of trade in the Territory Products or other Licensed Products that are interchangeable or recognizably similar to the NDA Licensed Products. For purposes of this Section 4.1, products shall be considered interchangeable or recognizably similar based on similarities between their quantitative and qualitative formulae, product usage, appearance and dosage form. Should LLP license or reformulate for third parties licensed Products for distribution in other than the Direct Sales Market, NDA and LLP shall mutually consult to ensure that such third party reformulated or newly Licensed Products are not interchangeable with, or recognizably similar to the NDA Products.

4.2    Product Education Services. Harvey Kaufman of LLP shall make himself available upon NDA's request to help introduce the Product(s), and specifically shall be available at NDA's option to attend Educational Meetings and provide a presentation, either alone or in cooperation with other Product experts selected by NDA, on the Product and /or perform related Educational Services at such meetings as may be requested by NDA.  Harvey Kaufman shall be available to attend NDA events not to exceed eight (8) times per year for purposes of educating NDA distributors on the Licensed Products. In connection with such educational appearances, NDA shall pay Harvey Kaufman reasonable travel and per diem expenses approved in advance by NDA. Should it be necessary to engage Harvey Kaufman in additional events, those terms would be negotiated on an as-need basis between LLP and NDA to include a stipend to Harvey Kaufman from NDA in lieu of LLP salary.

## SECTION 5 - TERM and TERMINATION

5.1    Breach.  The License may be terminated by either Party if the other Party materially breaches this Agreement and fails to cure such breach within forty five (45) days of the date that written notice of the breach is delivered to the nonbreaching Party to the breaching Party pursuant to Section 6.9.

5.2    In the Event of Acquisition of LLP by any Third Party or Entity The Agreement is binding between LLP and NDA. In the event of a full or partial acquisition of LLP, the new Party or Entity shall be bound by the Agreement. LLP shall make its best efforts to ensure the fulfillment of the Agreement.

## SECTION 6-GENERAL PROVISIONS

6.1    Severability.  In case any one or more of the provisions of this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect all or part of the Licensed Territory, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had never been contained herein; provided that such invalid, illegal or unenforceable provisions shall first be curtailed, limited or eliminated to the extent necessary to remove such invalidity, illegality or unenforceability with respect to the applicable law as it shall then be applied.

6.2    Execution; Governing Law; Jurisdiction; Arbitration.

       (a)    This Agreement shall not be binding upon LLP until is has been executed on behalf of LLP, by a duly authorized officer of LLP.

       (b)    This Agreement shall be governed by the laws of the State of Florida, as that law applies to contracts made and performed wholly within the State of Florida. The invalidity or unenforceability of any portion of this Agreement, should that be the case, shall not be deemed to affect the remaining portions(s) of this Agreement.

       (c)    This Agreement will be deemed executable for the purpose of Product inventories and Licensing Fees upon the beginning of Sales and Marketing by the German Division of MRI Labs. This is expected to commence on or about April 1st, 2004

6.3    Final Agreement.  This Agreement constitutes the final and complete agreement between the Parties concerning the subject matter of this Agreement, and between the Parties with respect thereto. **No Party shall be bound by any condition, definition, representation or warranty, other than as expressly set forth herein.** Any modification, revision or amendment of this Agreement shall not be effective unless made in writing and executed by both of the Parties.

6.4    Best Reasonable Efforts.   NDA shall exercise its best reasonable efforts to Market and Sell high quality Licensed Products in order to maximize the Final Selling Price Fees paid to LLP.

6.5    Waiver.  Any waiver of, or promise not to enforce, any right under this Agreement shall not be enforceable unless evidenced by a written document signed by the Party making such waiver or promise.

6.6    Headings.  The section and other headings in the Agreement are for the purpose of convenience only and shall not limit, enlarge or affect an of the covenants, terms, conditions or provisions of this Agreement.

6.7     Language. The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against any Party.

6.8     Notices. All notices, requests, demands and other communications hereunder shall be in writing and shall be sent by registered or certified mail, return receipt requested, or by commercial courier or by facsimile transmission to the Parties at their respective addresses or to such other person and place as either party shall designate for itself by notice to the other party as provided herein.

All notices to LLP shall be sent to the attention of Jim Bedell to 1350 Commerce Drive, Stow, Oh 44224,
Also notices to be sent to Mr. Jeffery Heintz, Brouse McDowell, 500 First National Tower, 106 Main St., Akron, Oh   44308.
All notices to NDA shall be sent to the attention of Rik J. Deitsch to 4001 NW 73rd. way, Coral Springs, Florida 33065

6.9     Authorized Execution. The individuals signing below each represent and warrant (i) that they are authorized to execute this Agreement for and on behalf of the party for whom they are signing, (ii) that such party shall be bound in all respects hereby, and (iii) that such execution presents no conflict with any other agreement of such party.

6.10    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original. But all of which taken together shall constitute one and the same instrument. The individuals signing below represent that they are duly authorized to do so by and on behalf of the Party for whom they are signing.

6.11    Fax Execution.  The Parties agree that transmission to the other Party of this Agreement with its facsimile signatures shall bind the Party transmitting this Agreement by facsimile in the same manner as if such Party's original signature had been delivered. Without limiting the foregoing, each Party who transmits this Agreement with its facsimile signature covenants to deliver the original thereof to the other party as soon as possible thereafter.

IN WITNESS WHEREOF, the parties have signed this Agreement through their duly authorized representative, as of the date first hereinabove written.

NDA CONSULTING INC.

By: _____

Name:   Rik J Deitsch
Title:   President

LIFELINK PHARMACEUTICALS

By: _____

Name:   Jim Beddell
Title:   President