```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------------
                                              :
LIFELINK PHARMACEUTICALS, INC.,   :      CASE NO. 5:07-CV-785
                                              :
              Plaintiff,                 :      JUDGE JAMES S. GWIN
                                              :
vs.                                        :      ORDER AND OPINION
                                              :      [Resolving Docs. No. 43, 59]
NDA CONSULTING, INC., et al.       :
                                              :
              Defendants.             :
                                              :
-----------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On March 16, 2007, Plaintiff Lifelink Pharmaceuticals, Inc. ("Lifelink") commenced the instant suit, asserting claims of patent infringement, breach of contract, fraud, conspiracy and unjust enrichment, and seeking declaratory judgment. [Doc. 1.] Plaintiff Lifelink alleges that Defendant Erik Deitsch ("Deitsch"), with his corporation, Defendant NDA Consulting, Inc. ("NDA"), and Defendant Stanley J. Cherelstein ("Cherelstein"), with his corporations – Defendants Waiora USA, Inc., Waiora International, LLC, Waiora Holdings, LLC, Waiora, LLC, Waiora Australia, LLC and Waiora Hong Kong, LLC  ("Waiora") – sold Lifelink's product without paying license fees to Lifelink. [Doc. 17.]

On May 8, 2007, Deitsch and NDA filed a motion to dismiss the Plaintiff's fraud and conspiracy claims. [Doc. 43.] On May 24, 2007, Waiora filed a nearly identical motion to dismiss Lifelink's fraud claim. [Doc. 59.] Because Defendants Deitsch, NDA and Waiora ("the defendants") make substantively similar arguments, and because the allegations against the defendants arise from

-1-

Case No. 5:07-CV-785
Gwin, J.

a common nucleus of facts, the Court considers the defendants' motions to dismiss Lifelink's fraud claims together. For the reasons stated below, the Court **DENIES** all of the defendants' respective motions to dismiss.

## I. Background

Lifelink, an Ohio corporation, owns by assignment U.S. Patent No. 6,288,045. The patent discloses a "Epithelial Cell Cancer Drug" and was issued on September 11, 2001. [Doc. 17.] In 2003, the president of Lifelink and certain shareholders met with Deitsch – a Florida resident and President and shareholder of NDA, a Florida corporation to discuss the marketing and sale of a product ("the Product") covered by the patent. *Id.* Based upon this meeting and subsequent discussions, Lifelink entered into an exclusive license agreement ("the Agreement") with NDA on March 9, 2004. *Id.*

Under the Agreement, Lifelink granted NDA exclusive rights to sell the Product in Germany through the German division of MRI Labs. *Id.* The parties expected sales to begin on or about April 1, 2004. *Id.* Lifelink also gave Deitsch proprietary information regarding the Product, with the express agreement that licensee Deitsch disclose the information only to those manufacturing the Product. *Id.* Soon thereafter, NDA claimed to be having problems marketing the Product in Germany. *Id.* Specifically, Deitsch sent Lifelink an e-mail on June 30, 2004, informing Lifelink of problems with "the German group" and with the manufacture of the Product. *Id.* Lifelink claims Deitsch and NDA refused to provide it with any other information regarding the manufacturing of the Product, including the identity of the manufacturer. *Id.*

During this same time period, Lifelink says that Waiora, a Florida corporation established on March 19, 2004, sold the Product through its Web site and a network of Defendant distributors

Case No.  5:07-CV-785
Gwin, J.

despite not having a license from Lifelink to do so. *Id.* Despite NDA's marketing of the Product through its relationship with Waiora, LifeLink says that NDA has only sporadically paid license fees throughout the term of their relationship and has refused to pay any license fees since April 17, 2006. *Id.* On July 20, 2006, Lifelink terminated its agreement with NDA. *Id.*

## II. Legal Standard

### *A. Pleading fraud with particularity under Rule 9(b)*

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  To meet the particularity requirement of Rule 9(b), a plaintiff who brings a fraud claim must generally "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).  The complaint must "alert the defendants 'to the precise misconduct with which they are charged'" to protect them "'against spurious charges of immoral and fraudulent behavior.' " *Id.* at 877 (quoting *United States ex. rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).  The plaintiff may make allegations of fraud based upon information and belief, but such complaints "must set forth a factual basis for such belief." *Sanderson*, 447 F.3d at 878 (quoting *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  The failure of a complaint "to identify specific parties, contracts, or fraudulent acts requires dismissal." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003).

Case No. 5:07-CV-785
Gwin, J.

### *B. Stating a claim upon which relief may be granted under Rule 12(b)(6)*

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in the pleader's favor. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch.*, 428 F.3d 223, 228 (6th Cir. 2005). A complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," assuming all allegations in the complaint are true, even if doubtful. *Id.* The plaintiff must provide enough facts to state a claim to relief that is "plausible on its face" and not merely "conceivable." *Id.* at 1974.

### **III.  Analysis**

### *A.  Defendants Deitsch's and NDA's Motions to Dismiss*

*1. Lifelink's Fraud Claim*

In its complaint, Lifelink says that the defendants participated in a fraudulent scheme "to obtain colorable right to market and sell the Product without having to pay license fees" to Lifelink. [Doc. 17.]  Specifically, Lifelink says the defendants both (1) fraudulently induced it to enter the Agreement through misrepresentations about the German division of MRI Labs and, (2) continued to make misrepresentations – such as their cessation of sales of the Product – to further the scheme and to induce Lifelink not to seek to enforce its rights after the parties executed the Agreement. *Id.*

With their motion to dismiss, NDA and Deitsch say that Lifelink's claim of fraud actually consists of two distinct claims – fraudulent inducement and fraud in the performance of the contract

-4-

Case No. 5:07-CV-785
Gwin, J.

– and argue that the Court should dismiss each for different reasons. [Doc. 43.] Specifically, NDA and Deitsch say that the Court should dismiss Lifelink's claim of fraudulent inducement because it lacks the particularity required by Federal Rule of Civil Procedure 9(b). *Id.* Similarly, the defendants argue that the Court should dismiss Plaintiff Lifelink's claim of fraud in the performance because Ohio's economic-loss rule bars it. *Id.*

The Court considers the defendants' arguments in turn, beginning with their contention that Lifelink's fraud claim lacks particularity.

*a. Lifelink has pled fraud with sufficient particularity under Rule 9(b)*

A plaintiff who brings a fraud claim must generally allege the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (holding that plaintiff's allegations of fraudulent reimbursement claims did not satisfy particularity requirements because they did not identify specific claims or dates on which they were made, but instead relied only on conclusory allegations of fraud). Lifelink satisfies this requirement.

Lifelink bases its claim of fraud on misrepresentations made both prior to the parties' Agreement and during the course of their relationship. [Doc. 17.]. More specifically, it alleges that Deitsch, NDA, Waiora and Cherelstein schemed to fraudulently induce it into entering the Agreement and then furthered the scheme with misrepresentations intended to prevent Lifelink from enforcing its rights under its patent and the Agreement. *Id.*

Three alleged misrepresentations are central to Lifelink's claim: (1) Deitsch and NDA misrepresented the availability of the German division of MRI Labs and its ability to market the

Case No.  5:07-CV-785
Gwin, J.

product, in order to induce Lifelink into entering the agreement, (2) Deitsch, NDA and Waiora made representations that they had stopped selling the Product when they knew they continued to do so, and (3) to avoid paying license fees, Deitsch, NDA, Waiora and Cherelstein made representations to Lifelink that Lifelink's patent did not cover the Product while, at the same time, making representations to the public that it was protected by the patent. *Id.*  Lifelink has alleged the time, place and content of each of these misrepresentations.

First, the Plaintiff's amended complaint and the Agreement itself clearly articulate the time and place of the first alleged misrepresentation.  The parties entered into the Agreement on March 9, 2004, following discussions that began in 2003. *Id.*  The Agreement stated that it would be executable "upon the beginning of Sales and Marketing by the German Division of MRI Labs.  This is expected to commence on or about April 1st, 2004." [Doc. 17, Exhibit B]  By including sales and marketing by the German division of MRI Labs in the Agreement, and stating that the parties expected such efforts to begin just over three weeks after the parties signed the Agreement, NDA gave the impression that it would have little difficulty accessing the German sales and marketing infrastructure of MRI Labs.  Such assurance helped convince Lifelink to enter the Agreement.

Deitsch and NDA argue Rule 9(b) prohibits Lifelink from basing "upon information and belief" its assertion that the German division of MRI Labs was not available to them as represented.  [Doc. 59.]  Courts, however, have permitted allegations of fraud based upon information and belief, although the complaint "must set forth a factual basis for such belief."  *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  Here, such a factual basis is readily inferable from the Plaintiff's complaint based upon the fact that (1) the Agreement itself

-6-

Case No. 5:07-CV-785
Gwin, J.

anticipated MRI labs to begin sales and marketing in Germany less than three weeks after the parties executed the agreement, and (2) Waiora was incorporated within ten days after execution of the agreement, before ultimately becoming the primary distributor of the product. [Doc. 17.]

Similarly, Lifelink has also alleged the time, place and content of Deitsch's, NDA's and Waiora's misrepresentations regarding sales of the Product. Specifically, the Plaintiff supports this allegation by noting that although NDA represented in a July 2006 letter that neither it nor Waiora were then selling, marketing, or distributing the Product, both Waiora and NDA were actively marketing the Product as "Natural Cellular Defense" and representing to consumers it was protected by Patent No. 6,288,045 – Lifelink's patent. [Doc. 17.] Moreover, Lifelink's Complaint says that such misrepresentations continued even after the termination of the Agreement, noting that Cherelstein sent an e-mail on October 24, 2006, to the inventor of the Product – also a Lifelink shareholder – stating that Waiora was selling the "product you created and patented" as "Natural Cellular Defense." [Doc. 17, Exhibit C.]

Finally, Lifelink also has adequately alleged the time, place and content of Deitsch's, NDA's, Waiora's and Cherelstein's misrepresentations regarding the patent. In addition to the allegations detailed in the preceding paragraph, Lifelink says (1) Waiora's website advertised the Product as "Natural Cellular Defense" and informed consumers that Patent No. 6,288,045 protected it, (2) Waiora's bottles and literature referred to the same patent, and (3) other websites, "some of which may have been posted by Waiora distributors," marketed the Product as protected by a patent owned by Deitsch. [Doc. 17.] Such actions arguably furthered the defendants' scheme by making the Product more attractive to consumers – and potentially increasing sales – while at the same time preventing Lifelink from enforcing its patent rights. Accordingly, the Court again finds that the

Case No.  5:07-CV-785
Gwin, J.

Plaintiff's complaint satisfies Rule 9(b)'s specificity requirement.

Ultimately, the Court finds that Lifelink has sufficiently alleged the time, place and content of the defendants' misrepresentations and adequately detailed the defendants' fraudulent scheme and intent.  Accordingly, the Court denies the defendants' motion to dismiss Lifelink's fraud claim on the basis of Rule 9(b).

### b. The economic-loss rule bars Lifelink's claim of fraud in the performance

The Court next considers whether Ohio's economic-loss rule precludes Lifelink's claim of fraud, such that the Court should dismiss it pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Ultimately, the Court finds that the economic-loss doctrine is not applicable in this instance and that it therefore does not bar Lifelink's claim.

Common-law fraud is a tort claim.  Ohio's economic-loss rule typically prevents a plaintiff who has suffered only economic losses from recovering tort damages.  *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005).  Tort law provides redress for losses suffered by breach of a legally-imposed duty that protects societal interests.  *Id.*  It is not meant to provide redress "for losses suffered as a result of a breach of duties assumed only by agreement."  *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Assn.*, 560 N.E.2d 206, 211 (Ohio 1990) (quoting *Sensenbrenner v. Rust, Orling & Neale*, 374 S.E.2d 55, 58 (Va. 1988)).

Rather, compensation for such losses requires "analysis of the damages which were within the contemplation of the parties when framing their agreement" and therefore "remains the particular province of the law of contracts."  *Id.*  A plaintiff therefore has no tort claim when his injury is limited to loss of the benefit of a bargain because the duty of the promisor to fulfill the terms of the bargain stems from the contract alone.  *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th

Case No. 5:07-CV-785
Gwin, J.

Cir. 1976). A tort claim can exist independent of a contract claim based upon the same actions only if the breaching party has breached a duty separate from contractual duties, i.e., "a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mutual Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996).

The economic-loss rule does not bar fraud in this case because Lifelink has alleged at least two injuries beyond mere economic loss: (1) that Deitsch improperly disclosed proprietary information, and (2) that all of the defendants infringed on its patent. In conjunction with the Agreement, Lifelink gave Deitsch proprietary information for manufacturing the Product with the express understanding that he would disclose it only to those people with a need to know. [Doc. 17.] Lifelink's complaint implicitly alleges that Deitsch and NDA improperly disclosed this information by arguing that the defendants manufactured and sold the Product outside of the process outlined in the Agreement. Such action could be considered a misappropriation of trade secrets, that Ohio law recognizes as a tort, such that the economic loss role does not apply. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 861 (Ohio 1999).

Under the Ohio Revised Code, a trade secret is "information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, . . . method, technique" that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ohio R.C. § 1333.61(D). Misappropriation, in turn, includes "[d]isclosure or use of a trade secret of another without the express or implied consent of the other person by a person who . . . [a]t the time of the disclosure

Case No. 5:07-CV-785
Gwin, J.

or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Ohio R.C. § 1333.61(B)(2)(b).  Based upon these definitions, Lifelink alleges an injury distinct from any contractual breach and – by extension – the economic loss rule.

Similarly, Lifelink also alleges that the defendants have infringed on its patent by manufacturing, distributing and selling the Product, or a product which infringes on its patent, without being licensed to do so. [Doc. 17. ]  Indeed, the core of Lifelink's complaint is that all of the defendants actions were predicated on violating its patent rights, which exist independent of any contractual duties.

Specifically, the Plaintiff alleges that the defendants first  fraudulently induced Lifelink into entering the Agreement – so as to obtain colorable rights to the patent – and then prevented Lifelink from enforcing its rights under both the patent and the Agreement through later misrepresentations. Such actions, if proven at trial, would breach the Plaintiff's rights under the patent – which, again, exist independent of any contractual provisions.  Accordingly, the Court again finds that the economic loss rule does not apply to the instant case because Lifelink alleges that the defendants have violated duties separate from their contractual duties and therefore denies the defendants' motion to dismiss the claim on the basis of Ohio's economic-loss rule.

*2. Conspiracy to Defraud*

Deitsch and NDA also move to dismiss Lifelink's conspiracy claim under Rule 12(b)(6), arguing that Lifelink has not adequately alleged the claim of fraud necessary to support a claim of conspiracy to commit fraud. [Doc. 43.]  Having found, however, that Lifelink has stated a valid fraud claim, the Court rejects the defendants' argument and therefore denies their motion to dismiss

-10-

Case No. 5:07-CV-785
Gwin, J.

the Plaintiff's conspiracy claim.

### B. Waiora Defendants' Motion to Dismiss

Waiora also moves to dismiss Lifelink's claim of fraud, arguing that (1) Lifelink has not stated its claim against Waiora with sufficient particularity as required under Rule 9(b), and (2) the economic-loss rule bars Lifelink's claims of fraud. [Doc. 59.]  The Court disagrees.

*1. Rule 9(B)*

With respect to Rule 9(b),  Waiora notes that in the portion of Lifelink's amended complaint specifically devoted to alleging fraud, Lifelink refers to Waiora only once, alleging that Deitsch, NDA and Waiora, through counsel, made representations to the effect that they had stopped selling the Product. *Id.*  Waiora argues that this does not meet the particularity requirement of Rule 9(b). Elsewhere in the amended complaint, however, Lifelink says that Waiora, along with Deitsch, NDA and Cherelstein, conspired to defraud Lifelink, and that the four defendants "all had knowledge of the conspiracy, all participated in the formation and/or continuation of the conspiracy, and all acted . . . to further the conspiracy." [Doc. 17.]  By alleging that Waiora knew about and participated in the alleged conspiracy to defraud, the Plaintiff implicitly argues that Waiora acted alongside Deitsch and NDA in defrauding Lifelink.  Because Lifelink has pled fraud against Deitsch and NDA with sufficient particularity, *see supra*, its pleading against Waiora is also sufficiently particular.

*2. Economic-Loss Rule*

Additionally, Waiora argues that the economic-loss rule precludes Lifelink's fraud claim for the same reasons advanced by Defendants Deitsch and NDA.  *Id.*  The Court rejects this argument for the same reasons discussed in the preceding section and accordingly denies Waiora's motion to dismiss the Plaintiff's fraud claim.

-11-

Case No. 5:07-CV-785
Gwin, J.

## IV.  Conclusion

For these reasons, the Court **DENIES** Deitsch's and NDA's motion to dismiss and **DENIES** Waiora's motion to dismiss.

IT IS SO ORDERED.


Dated: August, 7, 2007                                s/        *James S. Gwin*
                                                                       JAMES S. GWIN
                                                                       UNITED STATES DISTRICT JUDGE